IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-30092

Summary Calendar
_____


RICKY ENGLISH,

                         Plaintiff-Appellant,

v.

JACKSON NATIONAL LIFE INSURANCE COMPANY,

                         Defendant-Appellee.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
(95-CV-2324-R)
_____
August 1, 1997
Before KING, JOLLY, and DENNIS, Circuit Judges.

PER CURIAM:*

     Ricky English ("Ricky") brought claims against Jackson

National Life Insurance Company ("JNL") to recover death benefits

under a life insurance policy.  Ricky appeals the district

court's grant of summary judgment in favor of JNL.  We affirm.

                 **I.  FACTS AND PROCEDURAL HISTORY**

     In August of 1993, JNL issued a life insurance policy to

---

     *Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Ricky as owner and beneficiary on the life of his uncle, William English ("William"). Prior to obtaining this policy, Ricky contacted Henry Albert ("Albert") and told him that he was interested in purchasing a life insurance policy on the life of William. At the time, Albert was licensed to sell insurance for several companies, and life insurance and annuities were the primary focus of his business. Subsequently, Ricky, William, and Albert met to discuss life insurance at Ricky's home. Albert reviewed a JNL insurance application with William and Ricky that included questions concerning William's medical history. After responding out loud to Albert's questions read from the application, William signed the application in three places although the section containing questions about his medical history remained blank. At William's request, Ricky then made a copy of the application to keep.

Several days later, Albert requested that Ricky come to his office. At this meeting, Ricky gave Albert a check for the initial premium, provided some additional information on the application, and signed the application as owner and applicant in two of the places previously signed by William. Ricky states that he does not remember whether the section containing questions about William's medical history was still blank or filled in at this time.

Upon accepting the application, JNL issued a policy effective August 12, 1993, payable upon William's death in the

2

amount of $150,000.  This policy was delivered to Ricky's place

of business.  In part, the policy provided that:

> The consideration for issuing this Policy is the
> application and the payment of the first premium.  This
> Policy and the application, a copy of which is attached
> and made part of the policy, constitute the entire
> contract between the parties.  All statements made in
> the application will, in the absence of fraud, be
> deemed representations and not warranties; and no
> statement will void this Policy or be used as a defense
> to a claim unless it is contained in such written
> application.

On the final application, which was attached to the policy

received by Ricky, all of the questions concerning William's

medical history were answered in the negative.

On February 27, 1994, William died.  Ricky filed a claim for

death benefits under the policy in April of 1994.  Because

William died within the two-year contestable period of the

policy, JNL investigated the information provided on the

application.  Upon reviewing medical records, JNL learned that,

contrary to the answers on the application, William's medical

history included smoking within a year of the application and the

following hospital admissions: 1)  February of 1989 for an acute

myocardial infarction secondary to congestive heart failure,

coronary atherosclerosis, and diabetes mellitus; 2) March of 1989

for coronary bypass surgery, when the principal diagnosis was

intermediate coronary syndrome secondary to congestive heart

failure and diabetes mellitus; and 3) April of 1989, April of

1991, and July of 1992 for a second below-the-knee amputation as

3

a result of the complications of diabetes mellitus and peripheral vascular disease.

In a letter dated December 9, 1994, JNL notified Ricky that his claim for death benefits was denied because of misrepresentations contained in the application which led JNL to declare the policy null and void. JNL further asserted in this letter that had they known of William's medical history, the policy would not have been issued.

JNL noted that several of the questions on the application concerning William's medical history that were answered "no" were important in denying Ricky's claim. Specifically, they listed the following questions:

2. Have you ever been treated for, or ever had any indication of:
   d. Chest pain, discomfort or tightness; palpitations, high blood pressure, rheumatic fever, heart murmur, heart attack or other disorder of the heart or blood vessels?
   g. Diabetes: thyroid or other glandular or endocrine disorders?
   i. Deformity, lameness or amputation?
   j. Disorder of skin, lymph glands, cyst, tumor, or cancer?
   k. Allergies; anemia or other disorder of the blood?

3. Have you, in the past five years:
   a. Consulted or been treated by a physician or other medical practitioner?
   b. Been a patient in a hospital, clinic, or medical facility?
   c. Had an electrocardiogram, x-ray or other diagnostic test?

4. Are you presently taking any prescribed medication?

4

**6.** Have you ever requested or received a pension, benefits, or payment because of an injury, sickness or disability?

**8**a. Have you smoked cigarettes in the past 12 months?

On February 27, 1995, Ricky filed suit in Louisiana state court seeking recovery of death benefits under the policy. The matter was removed to federal court based on diversity jurisdiction. The parties filed cross motions for summary judgment. On October 17, 1996, the trial court granted summary judgment in favor of JNL. Ricky then filed a motion for a new trial and/or to alter or amend judgment and/or for reconsideration. This motion was denied on December 12, 1996. The district court concluded that there was no genuine issue of material fact regarding JNL's affirmative defense based on Louisiana Revised Statute § 22:619 that would allow it to deny JNL's motion for summary judgment regardless of whether the ultimate fact finder was a judge or jury. Ricky timely appealed.

## II. STANDARD OF REVIEW

In reviewing the district court's grant of summary judgment, we review the issues de novo, applying the same criteria used by the district court in initially evaluating the motion. Norman v. Apache Corp., 19 F.3d 1017, 1021 (5th Cir. 1994). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

5

material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The evidence and inferences to be drawn therefrom are reviewed in the light most favorable to the nonmoving party. FDIC v. Dawson, 4 F.3d 1303, 1306 (5th Cir. 1993), cert. denied, 512 U.S. 1205 (1994). Summary judgment is not appropriate if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

### III. DISCUSSION

JNL asserts that Ricky's claim for benefits was denied because Ricky made a material misrepresentation with the intent to deceive in applying for the policy and, thus, JNL has no liability to him under the policy. Louisiana Revised Statute § 22:619 sets forth the burden that JNL must carry in order to prove this affirmative defense:

> In any application for life or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer.

LA. REV. STAT. ANN. § 22:619(B) (West 1995). Courts interpreting this statute place the burden on the insurer to prove that 1) the applicant's statement was false, 2) the false statement was made with the intent to deceive, and 3) the false statement materially

6

affected the acceptance of the risk by the insurer or the hazard assumed. <u>Wohlman v. Paul Revere Life Ins. Co.</u>, 980 F.2d 283, 285 (5th Cir. 1992).

For the purpose of his motion for partial summary judgment, Ricky conceded that the information provided in the application was false and that there was a material misrepresentation, but argued that JNL could not carry its burden of proof to show intent to deceive. He stated that there was no genuine issue of material fact concerning intent. On appeal, Ricky now contends that the district court erred by granting summary judgment because a genuine issue of fact exists as to whether Ricky possessed the requisite intent to deceive.

The burden of proving intent to deceive may be satisfied by showing "facts and circumstances surrounding the application process indicating the insured's knowledge of the falsity of the representations made in the application and his recognition of the materiality of his misrepresentations or from circumstances which create a reasonable assumption that the insured recognized the materiality." <u>Wohlman</u>, 980 F.2d at 286.

Ricky asserts that while a misrepresentation in fact was made on the insurance form received by the insurer, neither he nor William made any false statement.[1] Ricky contends that

---

[1] Ricky conceded in his motion for partial summary judgment that there is no evidence other than that which is before the court on the issue of intent.

7

William answered all the questions Albert asked from the application, medical and otherwise, truthfully and completely. According to Ricky, both he and William relied upon Albert's expertise and special knowledge and assumed that Albert was doing what was required with regard to correctly and completely filling in the application. Ricky claims that Albert provided the false information on the application; he further contends that Albert should be considered an agent of JNL and that Albert's acts in erroneously filling out the application form should be considered the acts of JNL and not binding on Ricky. Under this theory, Albert's knowledge of William's true medical history would be imputable to JNL, and JNL could not then claim reliance on any misstatement of fact, and there would therefore be no legally cognizable misrepresentation. We disagree.

Assuming, arguendo, that Albert should be considered an agent of JNL, "[t]he rule that the insured is not responsible for false answers in an application, where they have been inserted by the agent through mistake, negligence, or fraud, is not absolute." Harris v. Guaranty Income Life Ins. Co., 226 La. 152, 157 (1954). Under Louisiana law, when the agent of an insurance company "by reason of mistake, fraud, omission, or negligence inserts erroneous or untrue answers to the questions contained in the application, these representations bind the insurer, but are not binding upon the insured, provided he (the insured) is justifiably ignorant thereof, has no actual or implied knowledge

8

thereof, and has been guilty of no bad faith or fraud." Id. (emphasis added). Ricky was not justifiably ignorant of the misrepresentations in the application. Ricky claims that he did not read the policy including the attached application when it was delivered to his office although he may have "glanced through it." As a result, Ricky maintains that he was not aware of any incorrect information on the application until after William's death despite the fact that he had the policy and the portion of the application containing erroneous answers in his possession for approximately six months before William died. Even viewing Ricky's assertions in the most favorable light, as we must, he "could not hold the policy delivered to him without becoming chargeable with knowledge of its contents, including the application which was attached to the policy and expressly made a part of it." New York Life Ins. Co. v. Stewart, 69 F.2d 957, 958 (5th Cir. 1934). "By accepting and retaining possession of the policy without objection, the insured adopted as his own the answers to questions contained in the attached application, whether those answers were or were not made . . . by the insured prior to his signing that application." Id.

We find it significant, moreover, that the signatures of both Ricky and William appear below the following statement on the insurance application:

> I (we), hereinafter jointly referred to as I, represent that all statements and answers made in all parts of this application are full, complete and true to the

9

> best of my (our) knowledge and belief. It is agreed
> that: (A) All such statements and answers shall be the
> basis of any insurance issued. (B) No agent can make,
> alter or discharge any contract, accept risks, or waive
> the Company's rights or requirements.

Ricky was aware at the time he signed the application that William had signed the form with blank questions. Ricky contends that despite his usual practice of not signing things if he did not read them or know what they contained, he did not read this language at the time he signed the application because Albert just put the form in front of him and asked him to "sign here."

While Ricky states that he is unsure whether the section of the application concerning William's health was filled out when he signed the application, his signature appears on the form attesting to the false information. We agree with the district court's conclusion that even if the key questions on the application form were blank when both Ricky and William signed the application, their signatures representing that the answers in all parts of the application were true, correct, and complete constitute a material misrepresentation made by both William and Ricky.

As to Ricky's recognition of the materiality of the misrepresentations made on the application, Ricky's deposition testimony indicates that he was aware of their materiality. He admitted that the amount of insurance that he was able to obtain on William's life was far in excess of what he expected to get for the premium he paid in view of William's health condition.

10

He also understood that JNL was going to rely on what was written in the application to decide whether to issue life insurance. Finally, he indicated that he "kind of had doubts" about whether he could get any insurance at all because William was a smoker, an amputee, and a diabetic; and he knew that if his uncle had written something on the application indicating that he was not in good health, then JNL might not have issued any life insurance. Despite this recognition, Ricky never asked any questions as to why the section of the application concerning medical history remained blank.

Based on the misrepresentations made by both Ricky and William, along with Ricky's appreciation of the materiality of information concerning William's medical history, we agree with the district court's finding that "the conclusion [is] inescapable that [Ricky] and his uncle manifested an intent to deceive." Ricky's denial of intent to deceive does not create a material issue of fact.

Alternatively, Ricky asserts that the district court erred in reaching the issue of intent. Ricky claims that Louisiana Revised Statute § 22:617 controls the standing of JNL to raise the affirmative defense of material misrepresentation with the intent to deceive. That statute provides:

> A. Any application for insurance in writing by the applicant shall be altered solely by the applicant or by his written consent . . .B. Any insurer issuing an insurance contract upon such an application unlawfully altered by its officer, employee, or agent shall not

11

have available in any action arising out of such contract, any defense which is based upon the fact of such alteration, or as to any item in the application which was so altered.

LA. REV. STAT. ANN. § 22:617 (West 1995). Ricky believes that this statute indicates that the district court should not have reviewed the evidence concerning the applicability of Louisiana Revised Statute § 22:619. Ricky asserts that circumstantial evidence would allow an inference that, after he signed the application, someone else (presumably Albert) filled in the erroneous information on William's medical history. However, beyond this assertion, the only relevant evidence on the record is that Ricky does not remember whether the section containing questions about William's medical history was still blank or filled in at the time he signed the application.[2] As a result, we conclude that the district court did not err in applying Louisiana Revised Statute § 22:619 to this case.[3]

---

[2] Ricky also claims that § 22:617 is applicable because JNL admits that the misrepresentations concerning William's health were not present on the application when William signed the application. Ricky believes that this admission can be derived from a reading of two undisputed material facts that he submitted:

4.  The insurance application signed by William English was essentially blank.
6.  Neither plaintiff nor William English filled in any additional information on the application form.

We do not agree that this amounts to such an admission.

[3] Ricky also asserts that Louisiana Revised Statute § 22:618 should estop JNL from seeking recision of the policy based upon material misrepresentations in the policy application.

12

## IV. CONCLUSION

For the foreging reasons, we AFFIRM the district court's grant of summary judgment in favor of JNL.[4]

---

This statute provides:

> No application for life or health and accident insurance shall be admissible in evidence in any action relative to the policy or contract, unless a correct copy of the application was attached to or otherwise made a part of the policy, or contract, when issued and delivered.

LA. REV. STAT. ANN. § 22:618(A) (West 1995). Ricky claims that this statute is applicable because the application attached to the policy delivered to his office was not a "correct copy" in that it did not include a part of the application; the agent's underwriting report. However, the relevant portion of the application containing erroneous information about William's medical history was attached to the policy. Further, Ricky refers to the application several times in his deposition and motion for partial summary judgment without raising this statute to object to the application's admissibility. We conclude that this statute is not applicable to this case.

[4] Because we affirm the district court's grant of summary judgment on other grounds, we do not discuss JNL's alternative argument that the policy is null and void because error vitiated the parties' consent to the insurance contract.

13